DURKIN and
HENDERSON
v.
CRANSTON and
others.

## DURKIN and HENDERSON *against* CRANSTON and others.

*A.* sent a bill drawn on *B.* in *London,* endorsed to *C.* his agent in *New-York,* who sold and endorsed it to *D.,* who remitted it to *E.* in *London,* to pay a debt due from *D.* to *E.* The drawee refused to accept the bill, which was regularly protested for non-payment, and the protest, with the *first* of the set, was returned to *D.* on the 4th of *October,* 1808, who gave immediate notice to *C.,* who paid to *D.* the amount of the bill on the 5th of *October,* with 20 *per cent.* damages. On the 20th of *August,* 1808, a few days after the protest, the drawee paid the amount of the bill and all charges, on the *second* of the set of exchange, to *E.* in *London,* which was not known in *New-York,* when the *first* of the set was paid by *C.,* though notice was regularly sent by *E.* to *D.* and afterwards received. On the day on which *C.* paid to *D.* the amount of the bill and damages, *D.* remitted a sum to *E* in *London,* to pay the debt for which the bill had been remitted, and for another sum which would shortly be due.

In an action for money had and received, brought by *A.* against *D.* to recover back the amount paid to him on the *first* of the set of exchange; it was held, that the payment after protest, to *E.,* the endorsee and holder of the *second* of the set of exchange, was good and valid; that the dishonour of the bill was waived by the holder, before the payment to *D.* in *New-York;* and that *A.* was entitled to recover back the money as paid under a mistake.

THIS was an action of *assumpsit* for money had and received to the use of the plaintiffs. The cause was tried at the *New-York* sittings, in *April,* 1810, when a verdict was taken for the plaintiff for 3,139 dollars and 94 cents, subject to the opinion of the court on the following case :

*Chipmill, Le Lure & Co.,* of *Petersburgh, Virginia,* on the 6th of *April,* 1808, drew a bill of exchange on *James R. Miller & Co.* of *London,* in favour of the plaintiffs, for 500*l.* sterling, at 60 days sight. The plaintiffs endorsed and sent it to *James McBride,* their agent, at *New-York,* to be disposed of there. The defendants purchased the bill of *McBride,* for the purpose of transmitting money to *Pigou, Andrews & Wilkes,* of *London,* to settle a balance which they owed to them, being about the amount of the bill. The bill was endorsed by *McBride* to the defendants, and by them to *Pigou & Co.,* who, upon receipt thereof, presented it for acceptance, which was refused. The bill was, afterwards, regularly protested for non-payment, and the *first* of exchange returned to the defendants at *New York,* under protest for non-payment, on the 4th of *October,* 1808. On the same day the defendants gave notice of the protest for non-payment to *McBride,* who, on the 5th of *October,* paid to the defendants 2,826 dollars and 66 cents, the full amount of the bill, and of the 20 *per cent.* damages.

ALBANY,
Feb. 1811.

DURKIN and
HENDERSON
v.
CRANSTO Nand
others.

The drawees of the bill, a few days after the protest for non-payment, and long before payment by *McBride*, to wit, on the 20th of *August*, 1808, paid the bill on the *second* of exchange, to *Pigou & Co.* with the interest, costs of protest, and all other charges accruing thereon. This payment was not known in *New-York*, when *McBride* paid the bill to the defendants, nor when they remitted the money; but notice of the payment in *London* had been regularly sent, and was afterwards received by the defendants. On the day the defendants received payment from *McBride*, they made a remittance of 939*l.* 10*s.* 7*d.* sterling, to *Pigou & Co.* partly to pay the balance for which the bill was remitted, and partly to meet new debts, which it was expected would shortly become due from them to *Pigou & Co.* for notes of *Pigou & Co.* which the defendants had to collect, as agents of *Pigou & Co.*, and which, with the former balance, would equal or exceed the sum of 939*l.* 10*s.* 7*d.* The accounts between the defendants and *Pigou & Co.* had been balanced by the defendants, without noticing the 500*l.* paid to *Pigou & Co.* on the bill; and *Pigou & Co.* had not furnished any accounts taking notice of the bill.

*Harris*, for the plaintiffs. The money was paid in this case, under a mistake of fact.[*] The plaintiffs did not know, at the time, that the bill had been paid in *London*, and had that fact been known to them, they would not have paid the money.

The defendants in this case were not the agents of *Pigou, Andrews & Wilkes.* They remitted the bill in their own names, and guarantied its payment. It was remitted in payment of a debt. In *Thompson* v. *Robertson & Browne*[†] it was decided, that the holder, or person to whom a bill is remitted, after the protest, is the agent of the remitter.

[*] *Doug.* 638. 1 *Term Rep.* 285.

[†] 4 *Johns. Rep.* 27.

ALBANY,
Feb. 1811.

DURKIN and
HENDERSON
v.
CRANSTO N and
others.

\* : *Johns. Cas.*
107. 1 *Dallas*,
26. 4 *Dallas*,
153.

† 4 *Johns. Rep.*
144.

If the defendants were agents, they were not entitled to damages; and the person to whom a bill is remitted in payment of a debt cannot recover damages in case of a protest.\*

If a suit had been brought against the present plaintiff, on the return of the *first* of the exchange, and before trial information had been received by them of the bill having been paid in *London*, they could have availed themselves of this payment, in their defence.†

Damages on bills of exchange are given in lieu of reexchange, and the costs and charges. In the present case there was no re-exchange, and so the defendants are not entitled to the 20 *per cent.* damages.

If the defendants have received the money of the plaintiffs, and had the use of it, they ought to pay interest.

*Colden* and *Hoffman*, contra. No doubt, where the same debt has been paid twice, under a mistake, one of the payments must be refunded. But the question is, which was the rightful payment? When the bill was returned protested, the defendants had an absolute and vested right to the amount of the bill, with damages; and they were not bound to wait, after a regular protest for non-payment, to see whether the bill might not eventually be paid in *England*. Such a doctrine would create the greatest uncertainty and inconvenience in commercial transactions. The plaintiffs engaged to the defendants that the bill should be accepted, and paid when it became payable. A right of action attached against the plaintiffs, when the bill was protested for non-payment; and the right of the defendants to recover of the plaintiffs the amount of the bill with damages, became absolute. A protest of the *first* of the set was a protest of the whole. The contract of the plaintiffs was broken, and the defendants had a legal and perfect right to the damages. Have they, by themselves, or by their

agents, done any act to waive this right? *Pigou & Co.* were the agents of the defendants no further than to receive the money on the bill, and to return it immediately, if protested. After the protest, their agency was at an end, and they had no authority, after the first of the set had been returned with protest, to make an arrangement with the drawees, so as to affect or destroy the rights of the parties under the protest. On a protest for non-acceptance, the holder may recover the amount of the bill with damages; and suppose they have been paid or recovered on a protest for non-acceptance, and the bill, on arriving at maturity, has been afterwards paid, can the endorsor or drawer recover back the damages he has paid?

Suppose a vessel sunk at sea, and a right of abandonment vested and loss paid, and the vessel afterwards is recovered, can the insurers recover back the money paid for a total loss. It is said that the defendants have sustained no damages; but their credit with *Pigou & Co.* was diminished to the amount of the bill.

We admit that the plaintiffs have a right to recover back the money they have paid from some person, but not from the defendants. If the drawees had funds in their hands, they are answerable for not accepting the bill. If the drawers had no right to draw, they are entitled to no remedy. If *Pigou & Co.* have received money which they had no right to receive, they are answerable. After the return of the bill they ceased to be the agents of the defendants, and acted at their peril. The defendants have not been in fault. They had a legal right to the money when they received it; and the rights of the parties must be determined as they stood at that time.

The plaintiffs cannot be entitled to *interest*, for the defendants had no use of the money, having remitted it immediately to *London*.

ALBANY,
Feb. 1811.

DURKIN and
HENDERSON
v.
CRANSTON and
others.

DURKIN and
HENDERSON
v.
CRANSTON and
others.

*T. A. Emmet*, in reply. In *Thompson* v. *Robertson* the only question was, who was entitled to the 20 *per cent.* damages. *Palmer* refused to take the bill in payment, and the court said that he was a mere agent, and not entitled to the damages. The bill was not remitted in the ordinary course of commercial transactions. The point decided was, that as between the remitter of a bill to pay a debt, and the creditor to whom it was remitted, the latter is not entitled to damages in case of a protest.

An endorsor is a conditional security, and he has no right of action on the bill against the other parties until he has paid it. How then have the plaintiffs broken their contract? The engagement of an endorsor is, that he will pay the money, if the drawee does not. The plaintiffs endorsed the bill to the defendants, by whom it was endorsed and remitted. The defendants, when the bill was dishonoured, were not called on to pay, and so they had no right to call on the plaintiffs. The only persons who could call on the defendants were the endorsees in *England*, and before applying to the defendants, they actually received the money there. Suppose *Pigou & Co.* had sued the defendants, as endorsors on the bill, could they not have pleaded or set up the subsequent payment? The bill was, in fact, paid in *London*, before the money was paid here. There was no liability, therefore, on the part of the defendants, as endorsors, to pay the bill, when they called on the plaintiffs and received the money. A payment of one of a set is a payment of the whole. If the principal and all charges and expenses were paid in *London*, on what ground can the 20 *per cent.* damages be claimed here? *Pigou & Co.* were not agents of the defendants. They held the bill, in their own right, as endorsees. They returned the *first*, but retained the *second* of exchange. They had a right, as holders of the *second* bill, to receive the money of the drawees. The payment to them was a valid one. And the money having been paid by the drawees, the responsibility of

every other party on the bill was discharged, and at an end. The plaintiffs cannot recover the money of *Pigou & Co.*, for they had a right to receive it. If the payment in *London* was rightful, every subsequent payment was wrongful. That payment is rightful which is paid to the person who has a right to receive the money, and the power to enforce its payment in a court of justice. *Pigou & Co.* had this right and this power, and the payment to them was, therefore, rightfully made.

ALBANY,
Feb. 1811.

DURKIN and
HENDERSON
v.
CRANSTON and
others.

It is said, that the rights of the defendants were vested and fixed by the protest. Admitting this to be so, yet if payment is made before an action is brought, it devests the right of action.

If the duty of *Pigou & Co.* was merely to receive the money, or return the bill, why did they not return the whole set? If they are to be deemed agents of the defendants, it is a case where both the principal and agent are entitled to receive; and if the payment is first made to the agent, it will defeat a subsequent payment to the principal. Commercial agents residing abroad are, in regard to persons residing here, considered as principals. The plaintiffs are not bound to look to persons beyond the jurisdiction of the state.

The plaintiffs were not bound to inquire or know in what character the defendants purchased and remitted the bill. The questions between remitters and the persons to whom bills are remitted, or between principals and agents, arise only between the immediate parties, and not between them and third persons.

*Per Curiam.* When notice was given to *McBride* of the non-payment of the bill, it had already been paid by the drawees to *Pigou & Co.* All the three of the set of exchange formed but one bill, and a payment to the holder is good, whichever of the set he may happen to have in his possession. This must be considered as a valid payment by the drawees, although it was after protest for

ALBANY,
Feb. 1811,

DURKIN and
HENDERSON
v.
CRANSTON and
others.

non-payment, because *Pigou & Co.* were holders of the bill as general endorsees, and the legal title was in them. *Miller & Co.* had a right to consider them as owners of the bill, and as owners they could waive the default and accept the payment. They did not hold the bill under any special or limited endorsement. The notice to *McBride*, and the subsequent payment by him, were consequently founded in mistake. It was done upon the assumption of a fact which did not then exist. The bill was not dishonoured when the payment was made by *McBride*, as that dishonour had been duly waived by the party competent to waive it. A drawee, as well as a third person, after he has suffered a bill to be protested for non-payment, may pay it *supra protest*. (*Chitty on Bills,* 163.) This case then resolves itself into the ordinary case of money paid by mistake of the fact, and the plaintiffs are entitled to recover back the whole sum paid, with the 20 *per cent.* inclusive, and interest; and judgment must, therefore, be entered upon the verdict as it stands.

Van Ness, J. *dissented.* He thought that after the bill had been protested for non-acceptance and non-payment, and sent back by the holder in *London* to the defendants here, the drawees paid the money to the holders in *London, at their peril.* That the different bills of the set made but one bill of exchange; and when one of the set was received by the defendants here with the protest for non-payment, their right to receive the money from the drawers or the endorsors, the present plaintiffs, was complete; and the money having been rightfully received, could not be recovered back by the plaintiffs.

Judgment for the plaintiffs.