*UTICA, Aug. 1828.*

Van Wart v. Smith.

Judgment for plaintiffs.

---

Van Wart *vs.* Smith & Holly, survivors of Irving.

This cause came before the court upon a case agreed upon between the parties, containing the following facts: The plaintiff, residing at Birmingham, in England, received there, on the 1st July, 1818, from the defendants and William Irving, deceased, then being co-partners in trade, residing at New-York, and transacting business under the firm of Irving, Smith and Holly, and being the correspondents of the plaintiff, a bill of exchange for £500 sterling, dated 6th June, 1818, drawn by Alexander Cranston & Co. upon Greg, Lindsay & Co. in London, and payable sixty days after sight, to the order of the plaintiff. The letter from Irving, Smith and Holly to the plaintiff, enclosing the bill, is in the following words: "New-York, 8th June, 1818. Mr. Henry Van Wart, Sir,—We have now the pleasure to enclose you, Alex'r Cranston & Co. first of exch'e in your favor on Messrs. Greg, Lindsay & Co. London, for stg. £500, say five hun-

*A., residing at New-York, having ordered goods of B., residing at Birmingham, in England, sent to B. on account of the goods, a bill drawn by C. in New-York, upon D. in London, payable to the order of B., at sixty days sight, but not indorsed by A., B. placed the bill in the hands of his bankers at Birmingham for collection, who transmitted the same to their correspondents in London,*

whom the bill was presented for acceptance to D., who refused to accept; but no notice of the non-acceptance was given to B. until the day of payment, when the bill was presented for payment and dishonored. B. transmitted the bill to A., requested payment of the amount, and apprized him of the circumstances in relation to the bill. A. refused payment, returned the bill, and insisted he was discharged from liability to make payment, in consequence of not having had due notice of the non-acceptance. In assumpsit by B. against A., to recover the amount of the bill for which A. was in advance at the drawing of the same, it was held, on a case made containing the above facts, that A. not having indorsed the bill, was not entitled to notice of dishonor, and remained liable to B. for the amount of the goods; that C., the drawer, not having funds in the hands of D., and the circumstances not being such as to induce a reasonable expectation that the bill would be accepted, was likewise not entitled to notice; that the bill was not received as an absolute payment, and that B., in relation to it, stood in the character of an agent to A., and having placed it, according to the ordinary course of business, in the hands of bankers for collection, and having apprized A. of the non-acceptance and non-payment as soon as he received notice himself, was not chargeable with a want of diligence or fidelity, in the discharge of his trust as an agent; that whatever might be the effect of the *laches* of the bankers, in an action against them by B. or by A., had he indorsed the bill, such *laches* had no bearing upon the rights of B.; and, therefore, that B. was entitled to judgment.

dred pounds sterling, dated New-York, 6th June, 1818, at 60 days sight, as a further remittance on acc't of our order for hardware. Respectfully yours. Irving, Smith and Holly." For which bill, Irving, Smith & Holly paid the full value at the time they purchased it for remittance. On the 2d July, the plaintiff delivered the bill to Woolley, Lewis, Moilliet and Gordon, who were bankers at Birmingham, to get it duly accepted by the drawers, who were resident in London. Woolley, Lewis, Moilliet and Gordon forwarded the bill on the following day to their town correspondents and agents, Sir John Lubbock & Co. bankers in London, who, on the 8th July, presented the bill to the drawees for acceptance. The drawees having, on the 1st July, received advice of the bill being drawn, from Cranston & Co., had written for directions as to accepting the same, to James Alexander & Co. of Belfast, in Ireland, and not having received any reply from them, gave the following answer to Lubbock & Co.: "Greg & Co. have written for advice, will thank Lubbock & Co. to have it only noted for the present." In consequence of such request, Lubbock & Co. did not protest the bill for non-acceptance, or give notice to Woolley, Lewis, Moilliet and Gordon, or to the plaintiff, of the refusal to accept, until the 10th September, 1818, when they sent a letter containing such notice by the post, which was received by Woolley, Lewis, Moillet and Gordon, on the 11th September, the bill having been presented for payment on the 9th September, and protested on that day for non-payment. Woolley, Lewis, Moilliet and Gordon did not give any notice to the plaintiff of the refusal of the drawees to accept the bill, until the 11th September, being the day Woolley, Lewis, Moilliet and Gordon received the bill from Lubbock & Co. This was the first notice to the plaintiff of such dishonor. The notice was accompanied with a protest. Woolley, Lewis, Moillet and Gordon were, for some time before and at the time when the bill of exchange was delivered to them, the general bankers of the plaintiff, and invariably charged the plaintiff commission on all the transactions which passed between him and them as his bankers, and did actually charge him, in their banking account with him, commission on this bill of ex-

change, at the rate of six shillings per cent., and they further charged him with the sum of £1 10s., the amount paid for noting for non-acceptance, and for protesting the bill for non-payment and charges. On 9th September, 1818, the bill was presented to the drawees for payment, and dishonored. The drawees had no funds or effects of the drawers in their hands, at the time when the bill was originally drawn, nor at any time prior to its coming to maturity ; nor had they any expectation of assets of the drawers, to meet the bill, but the drawees had been accustomed to accept for the drawers, under the guaranty of James Alexander & Co. of Belfast, for £10,000, which amount had been overdrawn. The drawers, before the bill was drawn, had been accustomed to draw on the drawees to a larger amount than the said sum of £10,000, but the drawees had never accepted any bills beyond the guaranty of £10,000, unless they were covered by other resources. The drawees had, by letter of the 3d July, 1818, addressed to the drawers, declined accepting the bill, unless they should receive further advice from Alexander & Co. Cranston & Co., the drawers, became bankrupts in New-York, on the 6th July, 1818, and the produce of their estate will be about two shillings in the pound. It appeared that Irving, Smith and Holly employed the plaintiff to purchase goods for them in England, by commission, and had ordered goods to a much greater amount than five hundered pounds, which goods were sent out by the plaintiff to them. The bill of exchange was remitted, and sent by Irving, Smith and Holly to the plaintiff, for and on account, and in part payment of the price of the goods. Irving, Smith and Holly did not endorse their names on the bill of exchange, and were wholly unknown to Woolley, Lewis, Moilliet and Gordon. The plaintiff sent the bill of exchange on the 12th September, 1818, to Irving, Smith and Holly, requesting them to pay the amount thereof, and apprising them of the circumstances in relation to the bill. On the 19th February, 1819, they wrote to the plaintiff, refusing payment, returning the bill of exchange, and insisting that they were discharged from liability to make such payment,

in consequence of not having had due notice of the non-acceptance of the bill of exchange ; whereupon the plaintiff, on the 1st April, 1819, returned the bill of exchange to Woolley, Lewis, Moilliet and Gordon, who refused to pay the same. The usual time of passage from England to New-York and back, was generally about ten weeks. The plaintiff thereupon sued Woolley, Lewis, Moilliet and Gordon, in the king's bench in England, for the amount of the bill, but that court held that the plaintiff was not entitled to recover against them, beyond the amount which the estate of Cranston & Co. would have yielded, had they been regularly charged with notice as the drawers of the bill. The plaintiff is still in advance for the defendants to the amount of the bill, and the question for the decision of the court is, whether, under the circumstances above stated, the loss of the bill is to be borne by the plaintiff, or by the defendants. If by the defendants, then judgment to be entered on a cognovit given by them for the amount claimed by the plaintiff, subject to the opinion of the court.

*G. Griffin*, for plaintiff. That the plaintiff is still in advance for the defendants to the amount of the bill, is admitted by the case ; and nothing that the plaintiff has done, or omitted to do in relation to the bill, has discharged the defendants from their liability. They are not discharged by the omission to give them notice of the non-acceptance by the drawees. They were not entitled to such notice ; their names were not on the bill ; they had sent it to the plaintiff as a remittance for goods furnished, and were not entitled to have the amount passed to their credit until it was paid. It was not paid, and notice of the non-payment was transmitted to them. It is the law merchant which requires notice when a party has placed his name on a bill. The defendants had not done so, and not having subjected themselves to the obligations, they are not entitled to the advantages of that law; nor are the defendants discharged from their liability, by the want of fidelity and diligence on the part of the plaintiff, as their agent. He employed bankers, whom he entrusted with the management of his own concerns, to col-

lect the bill. They transmitted it to their correspondents in London, who were guilty of a neglect of duty. The plaintiff is not answerable for any omission or neglect of duty of his sub-agents. The plaintiff has even done more than he was under obligation to do ; he sued his bankers for the *laches* of their correspondents in London. The case is reported in 5 *Dowling & Ryland*, 374, *Van Wart* v. *Woolley and others*. The court of K. B. held, that the plaintiff was not entitled to recover against the defendants in that suit, beyond the amount which the estate of *Cranston & Co.* would have yielded, had they been regularly charged with notice as the drawers of the bill. That estate will yield no more than two shillings in the pound. But the K. B. also held, upon the same state of facts now presented, that the plaintiff had not, as between himself and the present defendants, made the bill his own ; that he might, notwithstanding the want of notice of non-acceptance, recover from them the amount of the bill in an action for money paid, the bill having been sent to him without any endorsement by the defendants, and that, therefore, the plaintiff was not entitled to recover on the ground of having lost his remedy against the present defendants. A new trial was granted by the K. B. to ascertain the real amount of loss sustained in respect of Cranston & Co. the drawers of the bill, that not having been inquired into, or ascertained on the trial of the cause.

*Staples & D. B. Ogden*, for defendants. By the *laches* of the agents of the plaintiff, in not giving notice of the non-acceptance of the bill, the defendants are discharged from their liability. The general rule is, that the want of notice to the drawer of the dishonor of a bill, is tantamount to payment by him.

Notice should have been given to Cranston & Co. The fact of their having no effects in the hands of the drawees when the bill was drawn, under the circumstances of this case, did not dispense with the necessity of notice. The rule was first laid down in *Bickerdike* v. *Bollman*, (1 *T. R.* 405,) that a want of effects would excuse the giving of notice ; but the English judges have since expressed their regret that the

strict general rule was departed from in that case. The de-cision in that case is founded on the principle that the draw-ing of a bill, where a party has no effects in the hands of the drawee, is a *fraud* in itself; and if that can be proved, the no-tice may be dispensed with. The correctness of that princi-ple is not disputed, but it does not apply to this case. The bill here was drawn under such circumstances as induced the drawers to entertain a reasonable expectation that it would be accepted and paid. The drawees had a guaranty to the amount of £10,000 sterling, and though that amount was overdrawn, the drawers had been accustomed so to overdraw, and this was the first bill protested. That this was not a fraudulent act, is evident from the conduct of all the parties. The defendants paid the full value of the bill, purchasing it for a remittance; the drawers gave notice of their having drawn the bill previous to its presentment, and the drawees, instead of dishonoring it on presentment, requested it only to be noted, as they had written for advice to the guarantee of the drawers. Under these circumstances, notice could not be dispensed with without discharging the drawers. (20 *Johns. R.* 150, *the cases there cited, and* 16 *East,* 43.)

Notice should have been given to the defendants. There is no sense in the rule, that a party in the negotiation of a bill of exchange shall not be entitled to notice, unless he puts his name upon it. Had the defendants endorsed the bill, they would have assumed no new obligation, nor given a remedy against them which did already exist. They were the debt-ors of the plaintiff, and transmitted the bill as a remittance; why, then, were they not as much entitled to notice, as if their names appeared on the bill? If the mercantile law did not require notice, the common law did. A creditor cannot keep his debtor responsible *nolens volens.* Besides, had notice been given, the defendants might have obtained a preference from Cranston & Co. in the assignment of their property as confidential creditors.

The plaintiff was not the agent of the defendants. The bill was transmitted as a remittance, received as such, and placed by the plaintiff in the hands of his bankers for collec-

tion, for whose neglect he is answerable. The defendants, though not indorsers, must be considered as guarantees. A guarantee or surety is discharged, when any act is done, or omitted to be done, which discharges the drawer from his responsibility. By neglecting to protest the bill for non-acceptance, time was given, and thereby the guarantees were discharged; and by the neglect of giving notice to the drawers, they were discharged, and the defendants damnified.

The plaintiff, by suing the bankers in England, has elected his remedy. By the judgment of the K. B. it is determined he is entitled to recover at least two shillings in the pound, and a new trial is granted for further inquiry into the amount of his loss. He cannot recover against the bankers, and also hold the defendants answerable.

*G. Griffin*, in reply. It is not necessary to discuss the question, whether notice to the drawers must not be given when the bill is drawn *in good faith*, though there be no effects in the hands of the drawees, because here, evidently, the bill was not so drawn. On the eve of bankruptcy, without funds in London, with a full knowledge that the guaranty was overdrawn, and that the drawees never had accepted without being covered by other resources, Cranston & Co. drew the bill in question, without a reasonable expectation that it would be accepted. They, therefore, were not entitled to notice, nor were the defendants, not having put their names on the bill.

As the agent of the defendants, the plaintiff is not chargeable with want of fidelity or diligence. The bankers were employed by him in the ordinary course of business: they are responsible for these laches, and so it has been ruled in the K. B. Whatever is recovered by the plaintiff against them, will be for the benefit of the defendants.

*By the Court,* WOODWORTH, J. I think it is well settled that the defendants not having indorsed the bill, are not, by the law merchant, entitled to notice of its dishonor. (5 *Maul. & Selw.* 52.)

UTICA,
Aug. 1828.

Van Wart
v.
Smith.

It appears to me the plaintiff did not receive the bill as absolute payment. In *Owenson* v. *Morse*, (7 *D. & E.* 64,) it was held, that if the seller of goods takes notes or bills for them, without agreeing to run the risk of the notes being paid, and the notes turn out to be worth nothing, this will not be considered as payment. From the nature of the transaction, no such liability could have been within the contemplation of the parties. The plaintiff was the agent of the defendants; he had purchased goods for them, and they were his debtors. In this state of things, a bill is transmitted, the letter accompanying the bill declares it to be a further remittance on account of the order for hardware, thereby undoubtedly imposing on the plaintiff certain duties; but among the number, the right of considering the bill a payment, or the right to claim notice as on an indorsed bill, was not included. I have already said that the plaintiff thereby became an agent, and was bound to fulfil that trust with diligence and integrity. The bill was drawn on persons in London, and the plaintiff resided at Birmingham. It could not have been expected that he should present the bill personally; that duty must necessarily devolve on others. The plaintiff employed his bankers, persons accustomed to transact business of this description. They employed their agents in London, who seem to have been guilty of laches, and for whose conduct Woolley & Co. must be held responsible; but to whom? The plaintiff, it is true, prosecuted them, because, being the payee of the bill and the representative of the defendants, he was entitled to bring the action. Whatever he recovered, would enure to the benefit of the defendants. Had he succeeded in recovering the whole, the claim would have been satisfied. According to the decision in the king's bench, (5 *Dowling & Ryland's Rep.* 374,) the plaintiff was only entitled to recover damages for his loss of remedy against Cranston & Co. A new trial in that case was granted, but what were the ulterior proceedings does not appear. If the principle of agency applies, it is apparent that the proceeding against Woolley & Co. in no way affects the claim against the defendants, except to the extent that the plaintiff has recovered from them. As yet there does not appear there has

been any recovery. If the plaintiff was the agent, I do not perceive any laches on his part; he had no knowledge of the non-acceptance of the bill previous to September 11. As soon as he received notice of protest for non-payment, he advised the defendants, and demands payment, which was refused. That Lubbock & Co. were guilty of laches, is admitted; and if the facts in the case had been such as by law to entitle Cranston & Co. to notice, the plaintiff would have recovered the amount in England, and we should probably never have heard of this action. The king's bench decided, and I think correctly, that they were not entitled to notice. The drawees had no funds or effects of the drawers in their hands when the bill was drawn, or subsequently, nor any expectation of assets; the drawees had never accepted any bills beyond a guaranty of £10,000, unless they were covered by other resources. The cases of *Rucker* v. *Hiller*, (16 *East*, 45,) *Bickerdike* v. *Bollmar*, (1 *D. & E.* 408,) and *Robinson* v. *Ames*, (20 *Johns. R.* 146,) very clearly show that notice was unnecessary. The case in *Johnson*, puts the doctrine on this ground, that where there are any funds of the drawer in the hands of the drawee, or if at the time the bill is drawn, there are circumstances sufficient to induce a reasonable expectation that the bill will be accepted or paid, the drawer is entitled to notice. Here were no funds, nor any reasonable expectation of funds, for none had been provided, and the uniform practice of the drawees had been, never to accept unless secured. No remedy therefore was lost against Cranston & Co. on the ground of want of notice to them. But in answer to any supposed loss that the defendants might sustain against Cranston & Co. in consequence of not sooner receiving notice of the dishonor of the bill, it may be observed that the doctrine of notice as to them must be governed by this: was a faithful agent bound to give earlier notice than the time he first was apprized of the dishonor? It seems to me that no greater diligence could be required. If the defendants had indorsed the bill, the question would not be materially changed. Whether the bill was indorsed to the plaintiff by the defendants, or merely transmitted to him without indorsement, we have already seen it

was not a payment; it did not extinguish the original de-
mand, but was a bill sent to be collected with due diligence,
and if collected, to apply the proceeds. As between the de-
fendants and the plaintiff, in either case the result would have
been ·the same; but as between the plaintiff, the payee or
the defendants, (had they been indorsers,) and Woolley &
Co. the want of notice might have subjected Woolley & Co.
to a recovery of damages, resting on this ground : that al-
though the drawers were not entitled to notice, yet the in-
dorsers, had they been notified, might, for aught that appears,
have obtained security in whole or in part, notwithstanding
the insolvency; for we have no bankrupt law, nor is there
any·rule that prohibits a debtor, although insolvent, from se-
curing one *bona fide* debt, and excluding another. In my
view, questions of this kind might have been presented in
the action commenced by the plaintiff against Woolley & Co.
his bankers; but they do not enter into the merits of the ques-
tion now under consideration. I am of opinion that the plain-
tiff is entitled to judgment.