ALBANY,
Jan. 1831.

Lovett
v.
Cornwell.

---

## Lovett *vs.* Cornwell and Wing.

Where *an injunction* from chancery, under the act to prevent fraudulent bankruptcies by incorporated companies, was served upon a bank half an hour after it *opened for business*, by which its operations were suspended, *it was held* that the holder of a check, received after banking hours on the *preceding day*, was not bound to shew a presentment of the check for payment, to entitle him to recover upon the original consideration, although it appeared that the drawer had sufficient funds in the bank to pay the check, and that it would have been paid, had it been presented *before* the service of the injunction.

Error from the superior court of New-York. Lovett bought of Cornwell and Wing a quantity of timber, amounting to $1046,10, as per bill, and at *five* o'clock in the afternoon of the 28th May, 1828, the parties settled, and Lovett gave Cornwell and Wing a check on the *Franklin Bank* for $1000. On the next day, at *half past ten o'clock* in the forenoon, the bank *stopped payment* in consequence of a writ of injunction, issued out of the court of chancery, served on the bank. The bank paid checks as usual on the morning of the 29th May, from the time the bank opened at *ten* o'clock

A. M. until *half past ten,* when the injunction was served. Lovett had sufficient funds in the bank to pay the check, and it would have been paid, had it been presented before the bank stopped ; but it seems it was not presented. Cornwell and Wing brought their suit in the superior court, and declared on the check in three several counts : 1. Alleging presentment and non-payment on the 29th May ; 2. Alleging presentment on the 29th May, and that the bank on that day stopped payment, and from thenceforth entirely suspended its ordinary business and ceased to pay drafts and checks, &c. ; and 3. Alleging presentment and non-payment on the 4th of June. The declaration also contained the common money counts and an *insimul computassent.* The defendant insisted that the plaintiffs should be nonsuited in having failed to prove a presentment of the check and notice to the defendant. A verdict was taken for the plaintiffs for the amount of the check, subject to the opinion of the court ; a nonsuit to be entered, should the court be of opinion that the plaintiffs were not entitled to recover. The superior court gave judgment for the plaintiffs, and the defendant sued out a writ of error to this court.

The following opinions were delivered in the superior court :

By Chief Justice JONES. The questions arising from the facts of this case will be, *first,* whether proof of the presentment and demand of the check, and notice of its dishonor, were, under the circumstances of the case, indispensable prerequisites to a recovery on the check ; and *secondly,* whether the balance for which the check appears to have been given, was recoverable on the count upon an account stated or not. [These questions were considered at large upon the general principles of law applicable to the case ; but the opinion upon the point they involved is omitted, and that portion of the observations of the chief justice alone given, which relates to the legal effect and operation of the injunction upon the rights of the parties.] But if the general rules of law, or the usage of merchants, required the presentment of

the check and the demand of the money as prerequisites to the right of action against the drawer; and if the insolvency of the bank, or the temporary suspension of its payments, would not excuse the neglect of demand of payment and notice of dishonor; and even if proof of the due observance of those formalities should be held necessary to entitle these plaintiffs in other circumstances to sustain an action upon the antecedent debt for which the check was given; yet this case would not, in my view of it, come within this rule.

This case does not stand upon the insolvency of the bank, or its suspension of payment solely. The stronger ground is that the bank was under a legal restraint, and disabled by process of law from applying the deposits of the drawer to the payment of the check; and if such was the case, a demand could not have been of any possible avail to the drawer, and the reason given for requiring a demand upon a bankrupt fails, since the officers of the bank could not be expected, under such circumstances, to interpose with their own monies to pay the drafts of the dealers. How far a mere temporary restraint, by an injunction at the suit of a party praying for it as a precautionary measure, and liable to be dissolved or modified, would excuse the necessity of a demand, may perhaps be questionable; for in such case the deposits of the drawer on which he values, remain entire, and it may be that the obstacle to their application to the payment of the check will be speedily removed. But was this such an injunction, or was it not the remedial process, authorized by the act of the 21st April, 1825, "To prevent fraudulent bankruptcies by incorporated companies, and to facilitate proceedings against them, and for other purposes?" By the 17th section of that act, the court of chancery is authorized and required, upon the application of the attorney general, or a creditor of any incorporated bank or company, and upon proof that such bank or company is insolvent, or that it has violated any of the provisions of the act incorporating it, or of any other act which shall be binding upon it, to issue an injunction restraining such company and its officers from exercising any of the privileges or franchises granted by the act incorporating such company, or by any other act, from

collecting or receiving any debts, and from paying out or in any way transferring any of the monies or effects of such company, until such court shall otherwise order ; and it is declared that it shall be lawful for such court to appoint a receiver of the monies, property and effects of such company, and to distribute the same among the fair and honest creditors thereof. The legal effect of this proceeding is to dispossess the officers of the bank of all power and control over the money of the bank, and to make it unlawful for them to pay any order or checks upon them ; and when the process of injunction is accompanied with, or followed by the appointment of a receiver, the effect upon the depositors is to divest them of the right to withdraw their deposits, and it effectually operates as a statute countermand of their checks. The terms of the act are peremptory, that the monies, property and effects of the company shall be distributed amongst the fair and honest creditors of the corporation, and the deposits made part of the monies of the bank distributable amongst the creditors generally. The money which a dealer deposits is not kept distinct and separate in the vaults, for the use of the depositor, to be specifically returned to him upon demand ; but it is intermingled with the other monies of the institution, and makes part of its general funds for the common benefit, and only entitles the depositor to a credit upon the bank to the amount of his deposits, giving him a right to draw upon the bank to that amount at pleasure, and in checks payable on presentation. When, therefore, the bank subjects itself to the provisions of the statute, and the injunction issues, and a receiver is appointed, all right of every creditor to payment, other than by the ultimate receipt of the distributive share of the assets, wholly ceases. The check holders and the bill holders are alike deferred to the final settlement of the affairs of the bank for their dividends. The fund for the payment of checks is abstracted by the force of the statute, and the check can no longer be paid by the cashier, however great his desire might be to pay it.

Can a demand be necessary under *such circumstances ?* or, must not the entire change in the state of things, absolve the holders of the check from the obligation of presenting it for

payment to drawees who would incur a contempt by paying it, and therein act in their own wrong, and render themselves liable for the whole amount of the money to the creditors.   Is not the transfer of the fund upon which it was drawn, from the officers of the bank to the receiver, by the operation of law equivalent to the withdrawal of the money by the drawer of the check; and must it not equally dispense with the necessity of a presentment, or the formal demand of the money?   The supreme court of the state of Massachusetts, in the case of *Hale* v. *Burr*, 12 *Mass. Rep.* 86, decided that no demand of payment upon the personal representatives of a deceased promissor, or notice of nonpayment was necessary, under the laws of that state, to charge the endorsers, because an administrator is not obliged to pay any debt of the deceased, except such as are privileged, until the lapse of a year from his appointment; and because, in case of deficiency of assets to pay the debts, a general disposition takes place among all the creditors, with the exception only of those who fall within the privileged classes.   A demand, therefore, upon the administrator, would be nugatory and a mere troublesome formality, and it would be idle to require it.   The court in that case admit the rule to be otherwise in England; but they take the distinction, that in England the representative is at liberty to pay any debt he pleases, in preference to others of the same degree, and to the total exclusion of all others of the same grade, provided the residue of the assets are sufficient to discharge those of a higher grade; and that he may discharge himself by shewing that he has fully administered.   He may, therefore, pay the bill when called upon, and the other parties upon it have a right to the chance that he will.   But in the state of Massachusetts, when the estate is insolvent, there is no reason to presume or to suppose that a demand would be effectual.   This distinction appears to me to rest upon solid foundation, and could with equal fairness apply to the case of a bank, whose operations are arrested by the peculiar statute provisions existing in our state, and whose affairs are to be wound up and settled by a receiver.   Such a case must form an exception to the general rule.   No principle of law,

ALBANY,
Jan. 1831.

Lovett
v.
Cornwell.

nor any mercantile usage, can require so vain a ceremony as a formal demand of payment upon a party who is, by a public statute, divested of the means and the authority to pay. If therefore it sufficiently appears that the injunction in this case did issue under that statute, no demand of the check could be necessary, nor any notice of non-payment. The case, it is true, is deficient in clearness on this point, and it will be difficult to collect the character of the injunction from the facts it discloses. But the nature of the proceedings against the bank is a matter of notoriety; we cannot shut our eyes against the fact. The bank was a public institution located in this city. The injunction which suspended its operations emanated from one of the highest judicial tribunals, and was openly and publicly announced at the bank. It was accompanied, or promptly followed by the appointment of a receiver, who immediately entered upon the duties of his office, and displaced the officers of the bank, who formerly had the charge, custody and disposal of the funds of the institution; and his appointment, with the powers vested in him thereby, were published in the gazettes of the city. Acts so public, and proceedings so decisive in their character, and so open and efficient in their operation, were calculated to attract the attention of the citizens generally, and the debtors and creditors of the bank, in common with its officers and dealers of every description, were not only chargeable with notice of them, but must have been connusant of them. If therefore the case had been wholly silent on the subject, and had merely stated the fact that the bank had discontinued its operations and suspended its payments, the court might perhaps have judicially noticed the cause of the suspension; but the injunction is expressly declared to be the cause, and the case refers to the process and its general effect upon the institution, as matters of public notoriety, which it was not necessary further to describe or explain. An injunction, issued out of the court of chancery, arresting all the operations of the bank, and causing it to discontinue the payment of all drafts and checks upon it, and which was continued in force from the month of May to the time of the trial of this cause in the month of October following, could not be regarded as

ALBANY,
Jan. 1831.

Lovett
v.
Cornwell.

a mere temporary measure, nor properly referred to the ordinary powers of the court, but must be ascribed to the summary jurisdiction conferred upon it by the statute. It is difficult to conceive a case in which that court, in the exercise of its ordinary jurisdiction, could discreetly award to a suitor, seeking equitable relief by bill, as a mere cautionary measure, a process arresting at once the whole movements of a public bank in full operation, and deranging all the calculations of its numerous dealers, and shaking the public confidence in its solidity. Such a measure, unless speedily removed, must prostrate any monied institution. It is a remedy for extreme cases only, and its general application to ordinary cases could not be tolerated. Before the statute it was unknown, and under the statute it is applied in those cases only where the object and intent is to break up the institution, and distribute its funds among its creditors and stockholders. With the supplementary provision of a receiver to wind up its concerns, and the settlement and distribution of its property under the direction of the court, it becomes an efficacious and salutary remedy for the extreme cases to which it is intended to be applied. When, therefore, it is predicated of a public banking institution, operating under an act of incorporation, that its payments have been suspended, and its operations ceased in consequence of an injunction issued out of the court of chancery, we must necessarily intend that the injunction issued under the statute, and makes a part of a summary remedy provided for the cases specified in the act. The injunction, then, to which this case refers, must be the summary process given by the statute, and from its long continuance, must have been accompanied by the appointment of a receiver. But let it be conceded for a moment that we are not at liberty to act upon the knowledge of matters which we derive from public records and judicial acts, and proceedings of great notoriety, and that the case does not sufficiently disclose the nature of the injunction to enable us judicially to refer it to the statute, the consequence then would be, that we must award a new trial for the sole purpose of introducing that evidence into the cause. *Cui boni?* The facts are notorious, and the certain result

of another trial, if my conclusions from these facts are correct, must be a verdict for the plaintiffs. But I am satisfied, that upon the case as it stands, I may and ought to take the injunction which stopped the operations of this bank to be the statute process, issued under the act of the 21st April, 1825, "To prevent fraudulent bankruptcies," &c. I feel myself bound, therefore, to look to the peculiar character and legal effects of this statute injunction ; and the brief view I have taken of them, satisfies me that they render this case an exception to the general rule, and that no previous presentment of the check to the bank for payment was necessary to sustain the suit. I am accordingly of opinion that the verdict is right, and that the motion for a nonsuit must be denied.

By Mr. Justice OAKLEY. I think that the plaintiff has a right to recover upon the count in his declaration on an *insimul computassent.* It is well settled that the giving of the check in question was no payment of the debt arising from the sale of the timber. *Porter* v. *Talcott,* 1 *Cowen,* 359. *Everett* v. *Collins,* 2 *Campb.* 515. If the check was unproductive without any fault or negligence on the part of the plaintiffs, they may resort to the original indebtedness as the ground of the action ; not having received the check in payment of the account for the timber, they were merely agents of the defendant in drawing the money from the bank for the purpose of applying it to the satisfaction of the debt ; and if they were not guilty of any negligence in the transaction, whereby the defendant has sustained an injury, they may return or cancel the check, and sue on the original consideration. It is clear that there was no negligence on the part of the plaintiffs, in not presenting the check at the bank before it stopped payment. The bank was open but half an hour after the giving of the check, and the rule appears to be well settled, that no laches can be imputed to the holder, if the check is presented at any time during the day after that on which it is given. *Chitty on Bills,* 274, 5. It does not appear in the case that any notice was given to the defendant that the bank had stopped payment, or that the

check had not been paid. Before the defendant could avail himself of the want of any such notice, it was incumbent on him to shew that he had been injured by it. The nature and origin of the injunction served on the bank do not appear ; but as the effect of it is stated to have been an entire suspension of the business of the bank, we may take judicial notice that it must have been issued in pursuance of the 17th section of the *act to prevent fraudulent bankruptcies by incorporated companies,* and the legal inference therefore is, that the bank was insolvent ; and the consequence of the injunction was, that it was divested of all its funds, and rendered unable to pay any of its debts—all its property being therefore subject to general distribution among its creditors, under the direction of the court of chancery. In absence of any proof on the subject, we must infer that the defendant sustained no injury by the want of notice that his check had not been paid, as he could have taken no steps to withdraw his funds from the bank. The whole case seems to resolve itself into this : The defendant has purchased the property of the plaintiffs ; has given his check on a bank, not in payment of the debt, but to enable the plaintiffs to procure the money to satisfy it ; and the check has proved unproductive, by reason of circumstances beyond the control of the plaintiffs, and without any negligence on their part, which has been the source of injury to the defendant. The defendant then must still remain liable for the property ; and there being an appropriate count in the declaration, the plaintiffs are entitled to judgment. This view of the subject renders it unnecessary to consider whether, under the peculiar circumstances of this case, the plaintiffs were bound to prove a presentment of the check and notice of its non-payment, as if they had sued on the check alone ; and I do not mean to give any opinion on that point.

The cause was argued here by

*P. A. Cowdrey & S. P. Staples,* for plaintiffs in error.

*D. P. Tallmadge,* for defendant in error.

VOL. VI.                48

ALBANY, Jan. 1831.

Lovett
v.
Cornwell.

ALBANY,
Jan. 1831.

The judgment of the superior court was *affirmed;* this court fully concurring in the opinions pronounced in the superior court, and particularly approving of the views taken by Chief Justice *Jones,* of the operation of the injunction, as conclusively shewing that a demand of payment of the check was, under the circumstances of this case, entirely unnecessary, and as satisfactorily distinguishing it from those cases in which a demand has been held necessary, notwithstanding insolvency, want of funds, &c.

Judgment affirmed.