By the Court, Robertson, Ch. J.
The counsel for the plaintiffs in his points and on the hearing expressly repudiated this action as being one to recover back money paid merely by mistake; nor have I been able to discover how it could be sustained against the defendants under that aspect. Their principals, (Leé & Co.) may be liable on that ground, because they made the only communication to the plaintiffs, (a telegram,) which tended to mislead them'; none that emanated from the defendants ever reached them. The complaint contains a series of allegations, ending in a charge of fraudulent misrepresentation and concealment on the part of the defendants which would be wholly out of place in an action founded on mistake. Lee & Co. might possibly have become liable to the plaintiffs, if the surrender of the draft for the check of Griggs & Lothrop were in *585 law a payment of the former, although they knew nothing of it, upon the ground of mutual mistake, under the cases of Durkin v. Cranston, (7 John. 442;) Canal Bank v. Bank of Albany, (1 Hill, 287;) Bank of Commerce v. Union Bank, (3 N. Y. Rep. 230,) and other kindred ones. But no recovery could have been had on that ground against the defendants, because before any demand or notice by the plaintiffs, which was not made until December, 1857, they had paid over such money to their principals, by crediting it in their accounts, which were such that the latter were left indebted to them nearly $3000 on the 26th of August, 1857. For I presume it will hardly be contended that the agents should have paid over the actual money received, or its precise amount, in order to acquit themselves of any further responsibility, provided it was set off against other claims due them before any notice from the plaintiffs and the accounts were balanced.
This action, then, is one emphatically and wholly for deceit, practiced by the defendants; for which they are to be made responsible, as the plaintiffs claim, whether they committed it forthe benefit of others and paid the funds over, or not.
The complaint does not confine itself to claiming a discharge in law of the draft by its mere surrender and the receipt of the check for it, but adds averments that all other checks drawn on the same bank by Griggs & Lbthrop on that day were paid, and that it would have also been paid if presented. It also avers the ignorance of the plaintiffs of any demand when such check was given, and their . belief of the regularity of the second demand; brought about by some acts alleged to be previously stated. The only acts so stated are: such second demand and the dispatch of notices of non-payment to them (which was immaterial, as they never received them.) It avers the concealment of the alleged prior payment from the Park Bank by the defendants ; and their inducement of the bank to pay such draft, relying upon u such representations and concealments” whatever they were. It does not clearly appear *586 by such complaint what “ such representations ” were. The only previous statements, alleged to have been made to the plaintiffs, were. those contained in the notices of protest, which were perhaps what was intended. Such notices, however, were merely those of a notary in the ordinary course of his business, and as was proved by one of the plaintiffs (Johnson) and their clerk (Walker) never reached them. The only statement which could in fact mislead the plaintiffs was the before mentioned telegram of Lee & Co. with which the defendants had nothing to do, transmitted after the second demand, upon receiving which, and not until then, the former immediately requested the Park Bank to pay their checks on Griggs & Lothrop. There was not a particle of evidence adduced on the trial to show that the defendants made any representations ■ when they presented the draft for payment to the Park Bank; on the contrary the cashier of that bank testified that nothing was said when it was presented. The only deceit practiced by the defendants, therefore, for which the plaintiffs can claim to make the defendants liable, proved in the case, (if that be one,) is their failure to disclose to the Park Bank, the prior supposed payment of such draft by its surrender and the receipt of the check of Griggs & Lothrop therefor.
- The defendants present three principal grounds of- defense to their liability 'for the money paid by the Park Bank, in consequence of any deceit practiced by them, of which if any one is tenable, the judgment recovered in the action cannot be sustained. They are as follows:
First. That neither the plaintiffs nor any one but assignees of the Park Bank can recover back from the defendants the moneys paid by the bank to them. That it was not alleged in the complaint, found by the referee, or established by evidence, that such payment was made out of any moneys belonging to thp plaintiffs. Eor if, as is contended, such draft had been previously paid, were they liable to reimburse the bank therefor under any arrangement between them whatever which appears in evidence.
*587 Second. That there was no evidence in the case of any agreement by the defendants, to accept the check of Griggs & Lothrop in absolute discharge of the original draft, beyond the mere fact of the surrender of such draft and receipt of such check. That such mere surrender and receipt does not, per se, in law create- an unconditional agreement to receive such check absolutely in payment of the draft, nor, standing alone, is it evidence thereof. That a condition is attached by law to the agreement presumed to be created by such surrender and receipt, to wit, that the maker has reason to believe that the check will be paid if presented in proper time. That no such presumption arises if the makerhas reason to believe that the check will probably not be paid if so presented. And that the evidence in this case showed that the drawers neither had funds in the hands of the drawees to meet such check or other reason to believe it would be paid.
Third. That the defendants, receiving the amount in question, as mere agents of Lee & Co. upon a new employment by the latter, after the draft had been returned to them and without any knowledge of the notice sent by telegraph by the latter to the plaintiffs upon which the latter requested the Park Bank to pay their checks, or any prior communication by them to the plaintiffs, were under no more obligation to communicate to such bank the prior dealings with Griggs & Lothrop, than any other agent selected by Lee & Co. for the same purpose would have been. They were bound like any other messenger to do simply what they were instructed to do, to wit, to present the draft for payment and receive the amount. Such a suppression was therefore not a fraudulent concealment.
It is to be borne in mind, in examining these grounds of defense, that the character and aspect of this action is entirely different from one brought by the holders of a draft' or bill of exchange against an unfaithful collecting agent for negligence in not taking the necessary steps to charge the parties to the draft or collect the moneys, and *588 the plaintiffs are required to go further in their proof. It is an action to get back money alleged to have been paid by the drawers of a draft, or others for them, in consequence of a fraudulent imposition upon them by the defendants, after the draft had been already paid by a check of the drawees. In such case the onus of proof lies on the plaintiffs to establish their whole case, as well that the draft was paid by such check as that the defendants induced them to believe it had not, and therefore that any condition upon which such check was taken as payment was not only fulfilled, but known to the defendants to be so.
In reference to the first ground of defense, it,, is to' be observed that the complaint does not allege, nor has the referee found, that the draft in question was paid by the Park Bank; out of moneys of the plaintiffs. That point does not appear to have been urged on the trial, and it certainly was- not, on the argument before us. The complaint only states a request of the plaintiffs to the bank “ to protect their checks ” on Griggs & Lothrop, and 'the payment of such draft, pursuant to such request, by the bank. The referee finds the fact precisely in the s,ame words, notwithstanding there was only one request proved, and that was to protect their unpaid checks. Indeed, there was no satisfactory evidence that the bank paid as mere agents of the plaintiffs even if a check be a specific appropriation of a deposit. The testimony of Mr. Macy,_ that the defendants “ had funds all the time in the hands of the Park Bank, which they were drawing against, and the bank paid out of those funds,” clearly referred only to previous drafts on the bank and not to this draft on another person. The paying teller of that bank (Worth) testified that “the amount of that draft was charged to the drawers and they accounted to the bank on the basis of that charge,” implying rather a credit given than a payment from funds on hand, and these'.two were the only witnesses on that subject. Even assuming that the plaintiffs proved that the draft in question was paid out of their funds or that they would become liable *589 to the bank for the amount in question, upon a request by them, the former, to pay such draft, they never made such request. Their only request in evidence is the telegram of the 15th of August, which did not include all checks, but only those “which might not have been paid.” This was not accidental, since one of the plaintiffs (Johnson) testified that they meant to confine the bank to unpaid drafts. Upon such a limited authority, the plaintiffs could not be made liable to the bank for paying the draft in question; nor were the latter thereby authorized to use any funds of the plaintiffs for the purpose. Undertaking such agency, the bank was bound to see that the authority was strictly followed.- The difficulty of ascertaining the fact was immaterial. Besides, there could not have been much difficulty in learning from Griggs & Lothrop, what drafts of the plaintiffs upon them they had paid. Yet they took no steps for the purpose, although the draft had been mutilated by a cancelling iron. Under such a direction, their voluntary payment of such a draft, now claimed to have been been previously paid, could give them no rights against the plaintiffs. That negligence certainly surpasses any of which the defendants were guilty in taking the check of parties in good standing and sending it to the clearing house for collection. If any artifice had been practiced by the latter upon the Park Bank to induce them to believe the draft not paid, it might have made them liable to the latter, but not to the plaintiffs, who had fully protected themselves by special and limited instructions.
As to the second ground of defense, whatever may 'be the. language of elementary writers, (Story on Bills, § 419; Chitty on Bills, 433, 434,) no case has gone so far as to hold that the bare exchange of a check for a draft discharges the parties to the latter, so as to leave its holder to his remedy on the former only. Nearly, if not quite, all the cases -in which a question has arisen as to the effect of taking a check in place of a draft, and surrendering' the latter, have been suits by the owners of the drafts against their agents for *590 neglect in collecting them or charging the drawees. I cannot, however, agree with the learned counsel for the plaintiffs, who claims in his points, as he contended in his argument, that the effect as a payment of a draft of, “giving a check (for it) which is subsequently dishonored, * * as between the person who gives it and him who receives it, is not ” the only question involved, but that the rigid rules which makes a collecting agent liable for neglect of duty, are to be applied. All the cases to which he referred were those where the question was between principal and agent, and not between the holder and parties to a draft. As regards such parties, it has been settled law, in this state, for over half a century, since the ease of Johnson v. Weed, (9 John. 310,) decided in 1812, confirmed by numerous decisions, that the mere acceptance of a negotiable instrument for a debt, whether on a negotiable instrument or not, is not per se without a distinct agreement to receive it as such, a payment of such debt. (Porter v. Talcott, 1 Cowen, 384. Olcott v. Rathbone, 5 Wend. 490. Kobbi v. Underhill, 3 Sandf. Ch. 277. Cromwell v. Lovett, 1 Hall, 56. S. C. 6 Wend. 369. Vail v. Foster, 4 N. Y. Rep. 312. Turner v. Bank of Fox Lake, Ct. of Appeals, N. Y. March term, 1867; 2 Transc. App. 344.) In Johnsons. Weed, {ubi sup.) where a note of a third person had been taken for goods sold, the court said there must be a clear and special agreement that the vendor should take the paper absolutely as payment, or it will be no payment if if turns out of no value.” In the long posterior case of Olcott v. Rathbone, (ubi sup.) Marcy, J. said, in holding that a receipt of a check and a new promissory note for a prior note, was ho evidence that they were taken in payment, “ The mere giving up of a note is no satisfaction of it; it is not an act which, of itself, affects its validity.” In the very recent case of Turner v. Bank of Fox Lake, (ubi sup.) the defense of a drawer of a draft sued upon, was, that it was given for a former draft paid, as he claimed, at the time of giving such new draft, by the receipt of the check of the drawer therefor although the *591 latter, not being presented until the day after its date, was then dishonored, of the giving of which check he was ignorant when he gave the draft sued upon, is a case very like the present. The court there said (Grover, J.) that, “so far as the drawee was concerned, it was clear the check was no payment,” and that it was “to be regarded as equivalent to the taking by a creditor from Ms debtor of an obligation of a tMrd person, which, it was settled, was no payment.” It relied for that principle on the cases of Porter v. Talcott and Vail v. Foster, before cited, which are hardly as strong as some of the others. There is, therefore, no.room to doubt that it is incumbent upon a party, who seeks to establish that a draft had been satisfied by a check, to prove a separate special agreement to that effect by affirmative evidence, beyond the mere acceptance of the check and surrender of the draft.
Still it may be contended that a holder of a draft, who surrenders it on receiving a negotiable instrument therefor, without any positive agreement to accept it in satisfaction, may, by the fact of accepting such instrument, assume the duty towards those giving it, or those liable on the draft surrendered, of taking the proper steps necessary to charge the parties to such new instrument, by the neglect of which, he may make such instrument his own, and thereby virtually be estopped claiming the original draft; and perhaps the law in such case is not very clearly settled. That doctrine would make the receipt of the new instrument a payment of the old, unless such necessary steps be taken. As between the maker and holder of a check, the former is only discharged from liability by a failure of the latter to present it the next day after it is made, if payable in the place where given, there seems to be no good reason why any one who takes it for an antecedent debt or prior instrument should be held to a greater degree of diligence. Some cases, however, appear to hold that the taking of such check, in place of. a draft, imposes on the receiver of it the duty of demanding payment of it, not only with the ordi *592 nary diligence necessary to charge the maker, -hut with the utmost practicable diligence, by presenting it for payment on the very day it is received, unless some excuse is shown for not doing so. The opinion of the general term of this court in the case of Kobbe v. Clarke, reported in Selden’s notes of Appeal cases, (vol. 4, p. 11,) seems, however, to be the only one relied upon for that principle, where the action has been against one of the parties to the draft. The remarks of Campbell, J. in that case that, so far as the drawees of the draft in question, who were the defendants, were “ concerned, the draft was paid.” The plaintiff took their check and gave up the bill. “ The check was good at the time, and would have been if presented the day it was given,” must be looked- upon as obiter dicta, for the escape of the defendants from liability was put on no suph grounds, either at the trial or by the court of last resort, to which an appeal was taken. On the trial the exemption of the defendants from liability was made to depend upon a finding by the jury of either of two questions in his favor, which were, (1,) whether the drawees of the draft in question would have paid cash for it if their check had been refused ; and, (2,) whether the check would have been paid if presented the same day it was given. The propriety of submitting those questions to the jury was made the sole question in the Court of Appeals, and it was there upheld. So that it cannot be considered as authority for any thing beyond the precise point decided in it. Indeed, if looked upon as valuable, authority at all, it is somewhat singular that it did not find its way into a regular volume of reports.
Other subsequent eases haye upheld the necessity of presenting a check the same day it is received, in order to test its goodness, but they are all eases of actions by a principal against an agent for negligence in collecting. The most prominent ones are, The Commercial Bank of Pennsylvania v. Union Bank of New York, (11 N. Y. Rep. 214,) and Nunnemaker v. Lanier, 48 Barb. 234,) wherein the effect of receiving a check in exchange for a draft upon the liabilities of *593 the parties was incidentally considered and involved. In the first of those cases (Commercial Bank of Pennsylvania v. Union Bank of New York) the plaintiffs were merely agents of the holders, and the defendants subordinate agents of theirs to collect the draft in question. . The only really controverted question in it was, whether the plaintiffs could maintain such an action. The complaint in it contained two counts; one for not paying over the amount of the draft as if collected, and the other for not collecting it; and the defendants (who were a bank) were held to be liable (in the alternative, however, only) either because they surrendered the draft and took the check without authority, thus making it their own, or if they had such authority, for not presenting the check on the same day it was received, for payment. So that a determination of the effect of a receipt of a check for a draft on the liability of parties to it, was not necessary to the final decision of the cause. Much stress was laid in the opinion of the court upon the fact that the sub-agents of the defendants (who were also a bank) to collect such draft were chargeable with the check received for it, which was drawn upon themselves, because being for a larger amount than the draft they had paid the difference in cash, and was debited, on'their books to the maker, who was in the habit of overdrawing upon them, which overdrafts he made good, and he deposited on the same day negotiable instruments to the amount of such check with them, although they subsequently proved to be worthless. So that the defendants were made liable rather on the ground of having collected the draft by making the check their own, than for any negligence in collecting. In the other case, (Nunnemaker v. Lanier, ubi supra,) it was proved that the check taken for the draft would have been paid, if presented the day it was received, and the collecting agent was held liable for not presenting. Neither of such cases are authority for showing that as between the parties, the neglect to present a check on the same day it was received, *594 unless expressly in payment, discharges the parties to a draft.
But in the case of Turner v. Bank of Fox Lake the check received was transmitted through the New York clearing house the day after it was received, and it was held to be in time, because in the usual course of business, and that is decisive of this case.
But even if presentation next day, through the clearing house, of a check given in exchange for a draft were not in time to prevent the discharge of parties to the draft, yet the-former, to use the language of Judge Campbell in Kobbe v. Clark, [ubi supra,) must be “good” when received, and. such as would have been paid if presented, which standard is not reached by the check in question. The law does not leave the question of the probability of the payment of a check or draft, which requires its speedy presentment, to mere speculations and conjecture, but has established certain data from which alone it may be inferred, such as the possession by the drawee of funds of the drawer, and such a course of previous dealing as to warrant the belief that the draft will be paid, or an agreement to pay it. (Legge v. Thorpe, 12 East, 171. Brown v. Maffey, 15 id. 216. Rucker Miller, 16 id. 43. Robinson v. Ames, 20 John. 146. Van Wart v. Smith, 1 Wend. 227.)
In this case the drawers of the check in question, drew the same day $9000 more of checks than funds were provided for, on the bank on which it was drawn. They were largely overdrawn at the close of bank hours, and were during the day $40,000. It does not appear how quickly the $15,000 they had in it on deposit was paid out, even if the defendants had been hound to present such check, while it was therej which they were not. (Lovett v. Corn-well, 6 Wend. 39.) It does not appear, therefore, that funds were provided to meet this particular check. The only arrangement made for paying any check was. that by Griggs & Lothrop with the teller of the bank, in which they informed him they were going “to draw heavily” and he *595 “ agreed to pay.” How much “heavily ” would have reached to, there are no reliable means presented of determining. It must be construed to be one of those vague undertakings, which it is left to the good will and discretion of each party to terminate, when they please. There being, therefore, neither funds of the drawees in the bank from which such check could be paid, at all times, nor any definite stipulation to pay it from the funds of the bank, the defendants were not bound to go through the idle ceremony of presenting it. The drawees evidently considered the check as of no value,- by the promptness with which they gave back the draft in return for it next day. The plaintiffs did not even think proper to allege in their complaint, nor did the referee find absolutely, that such check would have been paid, but only in the alternative that it would have been either paid or certified, which is not the same thing. (Bradford v. Fox, 39 Barb. 205.) The readiness also with which Griggs & Lothrop surrendered the draft and took back the check, is strong evidence of at least their construction of the agreement with the teller and their opinion of the worthlessness Of the check.
The transmission by the plaintiffs to J. Lee & Co. of the telegram requesting them to present the draft in question to the Park Bank for payment after they had had an opportunity of learning from their correspondents, (Griggs & Lothrop,) whether such draft had been paid, is strong evidence that all parties considered it still unpaid. The referee has found that the plaintiffs did not know it had been paid or presented. That statement is supported only by the evidence of one plaintiff who merely speaks for himself. In an action like the present, fraud is not to be presumed, but proved, and every presumption consistent with the innocence of the defendants is to be made, rather than the contrary. The whole charge of .fraud turns on the question, whether the check of Griggs & Lothrop would have been paid if presented, or they had a good and reliable reason to believe it would be. It is not impossible that the plaintiffs *596 or the Park Bank might have learned all the facts from Griggs & Lothrop, (their correspondents,) or otherwise before paying the draft, and before the request by them to the holders of it, by telegram, to present it, so as .to know that they still remained liable. The inference and even presumption is that they did, rather than that the check would have been paid if presented, so as to make the defendants technically guilty of deceit
In reference to tlie third ground of defense suggested, that the defendants acted merely as agents of Lee &. Co. and were known so to act, and therefore they were under no personal, or moral, or legal obligation to disclose what they knew as to a prior demand, it is to be kept in view that all their prior agency in collecting the draft had ended, when they sent it back to Lee & Co. after the second demand, and that they were selected anew as agents, simply, to present such check at the Park Bank for payment, and that they said and did nothing afterwards 'to deceive it, and that no communication of theirs, or authorized by them, had reached the plaintiffs as to any prior non-payment. Whether they were responsible to their principals for negligence in collecting or not, was entirely a matter between them. It is true they had insisted on a re-exchange of the draft for the check, when the latter was found to be worthless, but they might have done that in good faith, believing that the check would not have been paid if presented, as they allege in their answer, or that' it did not in law constitute a payment. The complaint does not allege, the referee has not found, nor is there a particle of evidence in the case, that the defendants knew that the plaintiffs were ignorant of the transaction in regard to the check, or had been notified by any one that it had not been paid. They, therefore, had no reason to suppose that the plaintiffs were under any misapprehension as to their rights and obligations arising from any thing said or done by them, (the defendants,) and they, therefore, were not bound to do any thing to rectify it. "
*597 If Lee & Co„ had employed another agent to receive the money, even if they had the same knowledge, he clearly could not be made responsible for not communicating it, and the defendants should be in no worse plight after their first connection with the collection of the draft ceased. The plaintiffs voluntarily offered to pay, and the defendants were the mere conduit of' the money, under no obligations to interfere, and guilty of no fraudulent suppression of facts.
The action seems to have the object of either shielding • the Park Bank from the consequences of paying, under a direction to pay unpaid drafts of the same kind, a draft which the plaintiffs claim to have been paid, or of making the defendants liable, although mere agents, because it was more convenient to sue in this state, and perhaps because they were more responsible, instead of Lee & Co. who misled the plaintiffs by their telegram announcing the non-payment of the draft, and the charge of fraud is introduced, because without that the defendants could not be made liable.
I think upon every ground urged for the defense, the' legal conclusions of the referee were erroneous; his report should be vacated, the judgment reversed, a new trial ordered, and the order of reference vacated.